Argued October 22, 1976, affirmed February 8, reconsideration denied
March 16, petition for review denied June 21, 1977

TRUEBLOOD et al, *Petitioners,*

*v.*

HEALTH DIVISION, *Respondent.*

(CA 5741)

559 P2d 931

[ 434-a ]

Barry M. Mount, Portland, argued the cause for petitioners. With him on the brief were Stephen R. Frank, Tooze Kerr Peterson Marshall & Shenker, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This appeal involves judicial review of an order of the Administrator of the Health Division, ordering the annexation of a residential neighborhood known as Glenmorrie to the City of Lake Oswego. The annexation was ordered under statutory authority for mandatory annexation in cases of public health hazards. ORS 222.850 to 222.990.[1] Petitioners, residents of Glenmorrie, in ten assignments of error challenge the constitutionality of the statute, certain procedures during the hearing, the findings of the Administrator for lack of substantial evidence and the schedule of construction for the improvements to the sewer system.

These proceedings were initiated on September 28, 1973, by 12 residents of Glenmorrie who filed a petition with the State Health Division asking the Division to commence annexation proceedings. They

---

[1]This statute was subsequently amended in 1975. The wording of two sections will concern us in this appeal. Their wording prior to the amendment was:

"ORS 222.875. The hearing shall be for the sole purpose of determining whether a danger to public health exists due to conditions in the territory and whether such conditions could be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities. It may be conducted by one or more members of the division or by one or more members of the division's staff to whom authority to conduct such a hearing may be delegated. It shall proceed in accordance with rules which may be established by the division. Any resident of the terrritory proposed to be annexed or of the city may be heard. At the conclusion of the hearing, the person conducting the hearing shall prepare and submit to the division written findings of fact and his recommendations based thereon. The written findings shall include the results of the investigation, written statements or documents bearing on the purpose of the hearings, and other evidence brought out at the hearing."

"ORS 222.895(1). Within 30 days after the filing with the city under ORS 222.880 of a finding of the administrator that conditions dangerous to public health exist, any resident of the territory proposed to be annexed or the city, as a municipal corporation acting through its governing body, may appeal the finding to the circuit court of the county in which a major portion of the territory is located. The administrator and the city, or the persons who, under ORS 222.850 to 222.915, initiated the hearing before the administrator, shall be joined as defendants."

alleged that defects in subsurface sewage disposal systems, which were individual septic tanks and drain fields, were creating a danger to public health.

Following the statutory procedure, the petition was referred by the Division to the contiguous City of Lake Oswego.[2] The city developed preliminary plans for sanitary sewer facilities to remove the alleged health danger which called for an interceptor line to be built from the existing treatment plant to the neighborhood, paid for by federal funds, and for lateral lines linking each home to the interceptor. On April 2, 1974, the city council passed a resolution expressing an intent to annex the area and requesting the Division to investigate the allegations of a health danger.

In May, 1974, sanitarians from the Division conducted tests in the area to determine whether there was a danger to health created by raw or inadequately treated sewage. After flushing fluorescein dye thru the water system of a home, the investigators would look for seepage of the dye to the surface on the property surrounding the home. This test was conducted at 81 of the 131 homes in the area. Forty-six of these tests showed inadequate septic tank and drain field operation. The sanitarians detected presence of the dye and inadequately treated sewage in a creek that runs through the area, in the nearby Willamette River and in the ditch on either side of a major highway which transverses Glenmorrie. At each home where seepage was detected, a sample of the effluent was sent to the State Public Health laboratory for bacteriological analysis.

An administrative hearing was conducted by the Division on February 6 and 7, 1975, to determine whether a "danger to public health" existed and whether the City of Lake Oswego's proposed plan of sewer improvement would eliminate or alleviate the problem. At the hearing, the results of the bacteriolog-

---

[2]There is no contention raised that the territory is not otherwise eligible for annexation in accordance with ORS 222.111.

ical tests were introduced. They showed that in each of the 46 samples there was fecal coliform and fecal streptococci bacteria. Testimony indicated the presence of these bacteria was evidence of inadequate sewage treatment by the subsurface system, and that their presence created a danger to health.

By a temporary rule adopted by the Division for this hearing, petitions from homeowners wishing to be excluded from the annexed territory were also to be considered at the hearing. These petitions were to be filed by March 7, 1975, and were to be heard at a later continuation of the original hearing.

On December 9, 1975, the Administrator entered his order adopting the hearings officer's findings of fact and the recommendations, with some modification for exclusion of certain properties. Petitioners advance ten assignments of error which we discuss in the order posed by petitioners.

Petitioners' first assignment of error relates to this court's jurisdiction to hear the appeal. The statute was amended in 1975, and the amendments became effective after the hearing in this case had been concluded but before the hearings officer's findings of fact had been issued. The amendments changed some substantive provisions of the law and altered the procedure of appealing the Administrator's decision. Under the former statute, ORS 222.895, appeal was to the circuit court; after the amendment, the new provision, ORS 222.896, provided for appeal to this court. Out of caution and a desire to preserve all appeal rights petitioners have filed petitions for review in both courts arguing that the procedure for appeal should be governed by the statute prior to amendment, and that appeal should be dismissed in this court and heard in the circuit court.

In *Russell et al v. Pac. Maritime et al,* 9 Or App 402, 405, 496 P2d 252, Sup Ct *review denied* (1972), we reviewed the authorities and concluded;

"* * * (1) statutes abolishing appellate jurisdiction

[ 437 ]

apply to cases pending when the statutes become effective, e.g., *Libby v. Southern Pac. Co.,* [109 Or 449, 219 P 604, 220 P 1017 (1923)]; but (2) statutes which preserve a right of appeal but change the procedures therefor apply prospectively and do not affect pending cases, e.g., *In Re Estate of T. A. Stoll,* [188 Or 682, 214 P2d 345, 217 P2d 595 (1950)]."

*See also Billings v. Crouse,* 17 Or App 586, 522 P2d 1401 (1974); *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, Sup Ct *review denied* (1973), *cert denied* 417 US 919 (1974).

The converse reasoning would apply, if a case is not pending in the circuit court where review reposed prior to the amendment then the new appellate procedure would apply. In the case at bar the hearing was held prior to the effective date of the amendment but the Administrator's order was not issued until after the new appeal procedure went into effect. There being no appealable order and consequently no appeal pending, this court has jurisdiction to hear the appeal.

There is an additional question not raised by petitioners as to whether the substantive provision of the newly amended statute or the former statute would apply. It is necessary to resolve that question in order to review the proceedings. Since the hearing was held before the amendments to the statute became effective we will apply the substantive provisions of the former statute. *Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972). *See also Smith v. Clackamas County,* 252 Or 230, 448 P2d 512 (1968); *Kelly v. Silver,* 25 Or App 441, 549 P2d 1134, Sup Ct *review denied* (1976).

Petitioners, in their second assignment of error, argue that mandatory annexation under the statute imposes an oppressive burden on them in violation of their Fourteenth Amendment right to due process of law. They argue that since the construction of sewer lines to connect them to the city sewage system would subject each householder to an estimated average

[ 438 ]

assessment from $5,000 to $14,000 it places an oppressive burden upon the individual property owners.

In essence petitioners agree that annexation to alleviate a health hazard is a proper exercise of police power but argue it is an unreasonable exercise because it is expensive.

■ The Oregon Supreme Court in *Daniels v. City of Portland et al,* 124 Or 677, 265 P 790, 59 ALR 512 (1928), denied a similar constitutional challenge to a Portland health ordinance which required hotel rooms to have windows facing out to a street or an open space. Daniels, the plaintiff, had alleged, inter alia, the ordinance violated the Fourteenth Amendment because the value of his investment would be reduced if he complied. Our Supreme Court said:

> "* * * In the light of modern legislation, the right of law-making bodies, in the exercise of the police power, to regulate, or, in proper cases, to prohibit, the conduct or carrying on of a given business, is not limited by the fact that the value of the investment in the business prior to the legislation outlawing such business will be greatly diminished. See *Mugler v. Kansas,* 123 U.S. 623 (31 L Ed. 205, 8 Sup. Ct. Rep. 273). The regulation of hotels, tenements and lodging-houses under the police power vested in a municipality is a proper subject for legislative action; but the degree of regulation should be reasonable, and not arbitrary. The reasonableness of a given ordinance is preeminently and primarily a question for legislative judgment; and, in a doubtful case, the judicial authority must defer to the legislative wisdom. * * *" 124 Or at 683.

The burden of establishing unreasonableness in the exercise of governmental police power is upon the party urging that position. The wisdom of using annexation and sewer connection as a means of alleviating the health hazard is a legislative not judicial determination.

■ Many of the cases cited by petitioners in support of their contention were decided prior to *Nebbia v. New York,* 291 US 502, 54 S Ct 505, 78 L Ed 940, 89 ALR

1469 (1934), a principal case in the law of constitutional challenge to health and welfare legislation because of its economic impact upon individuals or groups of individuals. The Supreme Court in *Nebbia* declined to follow a line of older cases which had invalidated legislation on the ground it deprives an individual of substantive due process. *See Port of Coos Bay v. City of Coos Bay,* 23 Or App 8, 541 P2d 156, Sup Ct *review denied* (1975). The following quote from *Nebbia* illustrates the principles the United States Supreme Court has since consistently followed:

> "* * * Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty." 291 US at 539.

There is no claim the statutory scheme here under challenge is discriminatory, and certainly annexation to a city where sewer systems would be available is relevant to the problem of health hazard found in inadequate sewage disposal.

Although the legislation requiring annexation does not directly provide for assessment of property owners for sewer improvements that could be seen as a natural consequence. This, however, does not make the act an arbitrary exercise of a valid police power. Assessments for improvements is a common burden borne by many, if not most, real property owners.

The schedule for implementation of sewer plans to alleviate the health hazard found to exist includes a planned use of federal grant monies to partially defray cost of construction. Petitioners argue receipt of the federal funds is based on a contingency and therefore that method of financing is uncertain. Since we have held the possible financing of the improvements by direct property assessment would not violate the right to due process of law, it follows the lack of federal funding, which would be a windfall for an assessed

property owner, likewise would not violate the petitioners' constitutional right to due process of law.

As an additional basis for their assertion that due process is denied by the statute, petitioners argue the statute does not allow them to alleviate the problem by a less costly means such as repair of the existing septic tanks and drain fields. The choice between repair of existing facilities, annexation or an alternative plan pursuant to ORS 222.885 is purely a legislative matter. The choice petitioners would like to make is again a matter of cost. Petitioners have failed to meet the burden of establishing the statute is unconstitutional.

■ Petitioners' third assignment of error challenges the statute as being unconstitutionally vague and uncertain, in particular the words "reasonably clear possibility" found in ORS 222.850(4):

> " 'Danger to public health' means a condition which is conducive to the propagation of communicable or contagious disease-producing organisms and which presents a reasonably clear possibility that the public generally is being exposed to disease-caused physical suffering or illness, including a condition such as:
>
> "* * * * *
>
> "(b) Inadequate installations for the disposal or treatment of sewage, garbage or other contaminated or putrifying waste.
>
> "* * * * *."

Petitioners' argument seems to be "reasonably clear possibility" is internally inconsistent in that possibility, or as they term it "mere possibility", is the antithesis of a reasonable clarity. This phrase relates to the meaning of "danger to public health," which is defined in terms of a condition which exists in the area proposed to be annexed. The statute in paragraph (b), quoted above, amplifies the type of conditions the legislature had in mind. The hearing in this case specifically involved the question of disposal or treatment of sewage. The condition described in paragraph (b) needs no further amplification.

[ 441 ]

The test the Administrator is to apply in determining if the condition found to exist constitutes a health hazard is that it presents a reasonably clear possibility of exposure. Finders of fact from juries to referees are required to apply varying standards of proof; reasonable doubt, preponderance of the evidence, clear and convincing evidence. "Reasonably clear possibility" presents no unusual burden, i.e., a possibility that is reasonably clear to the Administrator.

■ The principal challenge in this assignment of error is that the concept danger to "public health" in the statute cannot be understood by men of common understanding. This is tantamount to saying there are insufficient standards or guidelines set out in the law for a proper administrative decision. This type of statutory challenge has been substantially diluted by the Oregon Supreme Court in *Warren v. Marion County et al*, 222 Or 307, 353 P2d 257 (1960):

> "As pointed out in Davis on Administrative Law [1 Davis, Administrative Law Treatise, §§ 2.10, 2.15], the important consideration in not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action. * * *" 222 Or at 314.

The statute provides for hearing and adequate safeguards to petitioners. They have failed to establish the statute is unconstitutionally vague and uncertain.

■ In their fourth assignment of error petitioners argue "the statutory definition of 'danger to public health' is not satisfied in the absence of some showing of actual disease or illness within the territory to be annexed." We do not construe the statute to require what petitioners contend.

Petitioners seem to argue a literal reading of the statute requires there be actual suffering or illness, disease caused, to which the general public is exposed, i.e., is able to see. They suggest this may not have been

what the legislature wanted but it is exactly what the statute requires.

As a condition precedent to annexation, under the statutory plan, the Administrator is required to find a danger to public health exists. ORS 222.850(4), which we set forth in material detail above, defined danger to public health as a condition, which presents a reasonably clear possibility of exposure to physical suffering or illness caused by disease. The clear plan of the statute is to alleviate *conditions* which expose the public to disease. To establish a reasonably clear possibility of exposure, it is not necessary to prove a disease caused suffering or illness actually exists.

■ Petitioners' fifth assignment of error asserts there is not substantial evidence to support a finding the public generally was exposed to disease caused suffering or illness.

Assuming, as petitioners contend, the term "general public" encompasses more than the residents of Glenmorrie, the record discloses substantial evidence to support the findings of fact and the conclusion that a danger to public health existed in the area.

The hearings officer made extensive findings of fact regarding the tests made with the use of tracing dye introduced into the residential water systems. Eighty-one houses were tested and 46 had inadequate subsurface sewage disposal systems. The summaries of the 46 systems determined by the hearings officer to be inadequate disclose some rather frightening examples of untreated sewage flowing to the surface near homes, near swimming pools, into a creek which flows through Glenmorrie, into a ditch along a highway transversing the area and through a culvert into the ditch on the other side. There was also untreated sewage which flowed into the Willamette River. A dramatic description of the problem occurred through the testimony of a resident who when digging a basement for a new residence discovered raw sewage flowing into the excavation and he was required by the

use of drain tile to route the untreated sewage around his house.

In addition, there was evidence the existence of the bacteria in the inadequately treated sewage, which came to the surface and flowed in the stream and river, constituted a hazard to health. The Administrator found, by adopting the hearings officer's findings and conclusions, that there was the possibility of transmission of disease through direct or indirect contact with the raw or inadequately treated sewage. More particularly, through the daily movement of people in and out of the territory, children playing around the areas where untreated sewage existed, animals, vectors, and insects coming into contact with the sewage, and the general public swimming or being in the waters of the Willamette River or near the highway where untreated sewage was found.

■ Peitioners' brief discloses disagreement with the findings and the reasoning of the hearings officer. We do not, on review, substitute our judgment for that of the Administrator who adopted the findings and conclusions of the hearings officer. We look to the record to see if there is substantial evidence to support the findings and conclusion. We find there is.

■ The sixth assignment of error claims there is not substantial evidence that any health hazard in Glenmorrie was a continual or normal condition. Assuming the statute requires such a finding, there was substantial evidence that such condition was not transitory. This claim of error is based primarily on the testimony of a witness, offered on behalf of petitioners, who testified, in his opinion, the testing period was at a time of abnormally wet weather; consequently, there were more septic tank failures. The hearings officer, in his written opinion accompanying his findings, specifically rejected this witness' testimony and opinion. Additionally, there was evidence that the soil in the Glenmorrie area was not feasible for subsurface sewage treatment systems. The Administrator is

entitled to presume from this evidence and the fact there were extensive sewage problems in the area, the condition would continue unless the soil were changed or some other method adopted to alleviate the problem.

■ Assignment of error number seven is summarized by a quote from petitioners' brief: "The field testing done by the Division [Health Division] was unreliable and the record does not establish that disease producing organisms from inadequate septic tanks in Glenmorrie pose any threat to the 'public generally'." This argument goes to the weight of the evidence presented before the hearings officer. There was substantial evidence about how the tests were done and how the results were interpreted. The weight to be given this evidence is for the trier of fact to determine.

■ The eighth assignment of error asserts a prejudicial error in allowing petitions for exclusion from the territory to be heard during the health hazard hearing. Six days prior to the hearing the Health Division adopted a temporary rule requiring the residents of Glenmorrie, who wished to be excluded from the area of annexation, to file such petitions prior to or during the course of the hearing.

On motion of petitioners the time was extended for 30 days for such filings and the hearing on these petitions was continued until after the hearing on the health hazard question. Petitioners, represented by counsel, made no objection to adoption of the temporary rule or objection to the procedure of hearing evidence on these matters at the same but separated hearing.

The substance of petitioners' argument is that a resident who filed a petition for exclusion was in effect admitting there was a health hazard from which he wished to be excluded. This claim of error seems more theoretical than actual. There is no evidence in the record to indicate findings were made on this supposed tacit admission. Petitioners had a complete and full

hearing on the issue of health hazard and the issue of exclusion.

The ninth assignment of error relates also to the procedure in the conduct of the hearing. Specifically, petitioners objected to allowing the Division to present evidence on financing plans for the sewer system after petitioners' opening brief had been filed. The hearing, which commenced February 6, 1975, was recessed February 7, 1975, to be continued at an unspecified date. On motion of petitioners the hearings officer set March 7, 1975, for final receipt of petitions for exclusion from the territory as well as for filing of petitioners' opening brief. In lieu of oral arguments both parties agreed to submit arguments in the briefs.

The hearings officer set the date for the continued hearing to June 19, 1975. In the published notice of hearing he stated:

"* * * The purpose of the hearing is to receive evidence and argument relative to petitions heretofore filed for exclusion of property from the territory proposed to be annexed. The hearings officer will, in addition, receive such further non-cumulative evidence as in his discretion is pertinent to the issues presently before the Division."

The notice was dated May 14, 1975.

At the time of the February 7, 1975, adjournment the hearings officer had expressed a desire to hear further evidence regarding some cost factors. The question of cost was introduced by petitioners in support of their constitutional challenge to the statute based on oppressive costs of the contemplated improvements following annexation.

June 12, one week prior to the continuation of the hearing, the Division filed a motion to allow introduction of evidence regarding the cost of construction of the proposed sewer system and the availability of federal funding. Petitioners noted their objections in a letter to the hearings officer. The motion was allowed at the June 19 hearing.

[ 446 ]

In ruling on the motion, the hearings officer stated he was receiving the evidence out of concern for the constitutional issue relative to cost raised by petitioners. He also said he would allow petitioners further continuances to present rebuttal evidence and to file additional arguments by way of written briefs. Petitioners availed themselves of neither offer with the exception of a reply brief filed after the Division brief was received.

■ The order of proof in the administrative hearing is within the sound discretion of the hearings officer. An administrative hearing does not match the rigors of a criminal or civil trial. The purpose is to collect sufficient reliable probative evidence to allow an informed administrative decision.

■ Petitioners' only assertion of prejudice was that the Division was allowed to "* * * shore-up the weakness in its case which Petitioners had pointed out in their brief. * * *" Petitioners were given an opportunity by the hearings officer to rebut, by way of evidence and argument, any matters presented by the Division. They were aware, by the hearings officer's statement, he wanted some further evidence on cost and were aware from the notice of hearing that further evidence would be allowed. There was no abuse of discretion and no lack of a fair hearing to petitioner.

■ The final assignment of error asserts the Administrator's order did not comply with the former statute, ORS 222.880(2),[3] because the schedule for construction of the sewer improvements contained contingencies which invalidated it as a schedule.

The required contents of the schedule are set forth in the former statute, ORS 222.860(3).

---

[3] "ORS 222.880(2). If the administrator finds that a danger to public health exists because of conditions within the territory, and that such conditions could be removed or alleviated by putting the plan into operation in accordance with the specifications and time schedule proposed, he shall file a certified copy of his findings with the city."

"* * * The council [council of annexing city] shall prepare a schedule setting out the steps necessary to put the plan into operation and the time required for each step in the implementation of the plan. * * *"

The schedule prepared by the city in April, 1974, set a time schedule for construction of the sewer improvements to commence after receipt of federal funding for which the city had previously applied. It also indicated the lateral sewage system in Glenmorrie could be constructed by formation of a local improvement district and suggested a time schedule for formation of such district.

A schedule of future events necessarily includes contingencies, it is nevertheless a schedule. We cannot substitute our judgment for that of the Administrator in determining if the schedule of putting the plan into operation could remove or alleviate the health hazard.

Financing of public improvement is often based on contingency, such as a majority vote to form an improvement district, a majority vote on a bond issue and the sale of the bonds once issued and appeals at various stages of the process. Federal contribution to local improvement has become a prime source of financing and must be considered an integral part of local planning. The evidence presented does not indicate the plan of financing is so remote as to make the schedule unworkable.

Affirmed.