Argued and submitted August 18, affirmed October 13,
reconsideration denied November 20, 1980,
petition for review denied February 18, 1981 (290 Or 491)

STEWART,
*Appellant,*
*v.*
CITY OF CORVALLIS,
*Respondent.*

(No. 34972, CA 16556)

617 P2d 921

William G. Nokes, Corvallis, argued the cause and filed the briefs for appellant.

Richard D. Rodeman, Deputy City Attorney, Corvallis, argued the cause and filed the brief for respondent.

Richard P. Benner, Portland, filed a brief amicus curiae.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

In September, 1978, after conducting hearings and making findings and conclusions regarding the annexation of a 76-acre parcel in which plaintiff's property is located, the Corvallis city council adopted a resolution submitting the annexation proposal to the voters of the city. At the November, 1978, general election, the voters rejected the proposal. Plaintiff then brought this declaratory judgment action, seeking to have the result of the election nullified and to have the property declared legally annexed to the city by force of the city council's actions. Plaintiff appeals from the trial court's summary judgment in favor of the city. We affirm.

Plaintiff's principal arguments follow three themes: first, that Oregon land use statutes and case law require final decisions on small tract annexations to be made in quasi-judicial proceedings, and that the submission of proposals for such annexations to a popular vote is therefore impermissible;[1] second, that plaintiff has a due process right to a quasi-judicial determination of whether his property will be annexed; and third, that the Corvallis comprehensive plan and/or the statewide planning goals compel the

---

[1] The referral of the proposed annexation in this case was required by Section 88 of the Corvallis City Charter, which provides:

"Unless mandated by state law, annexation, delayed or otherwise, to the City of Corvallis may only be approved by a prior majority vote among the electorate."

The charter requirement that there be an election in the annexing city on every proposed annexation (with exceptions not relevant here) differs from the election requirements of ORS 222.111 *et seq.* Under those statutes (again with immaterial exceptions), the governing body of the annexing city may either submit proposed annexations to the city's voters or follow procedures for annexation without a vote in the city. Where the latter procedures are followed, however, the voters of the city have the right to refer the annexation ordinance by petition. *See* ORS 222.111(3) and ORS 222.120(3). The parties and the amicus do not appear to contest that, if the state statutes rather than the charter provision were applicable here, the annexation proposal would have been subject to either direct referral to the voters of the city by the city counsel or to the voters' referendum right. Accordingly, plaintiff's and the amicus' arguments challenge the validity of the election provisions of ORS 222.111 *et seq.* as well as section 88 of the city charter.

annexation of plaintiff's property. The amicus curiae makes arguments which differ in specifics from plaintiff's, but which are to the same general effect.

In *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), the Supreme Court held that city governing bodies are required by ORS 197.175 to follow quasi-judicial procedures in determining whether proposed annexations are consistent with statewide planning goals. Implicit in the *Petersen* opinion is the requirement that certain other decisions in the annexation process must also be made quasi-judicially, *e.g.,* the determination of whether an annexation complies with the city's comprehensive plan. However, the Supreme Court stated in *Petersen:*

> "* * * Of course, we recognize that the broader issues involved in reaching final decisions on whether the land proposed for annexation should, in fact, be annexed to the city, and at what point that action should be taken, may cloak those ultimate decisions with a character which is more legislative than judicial. *See Griffin v. City of Roseburg,*255 Or 103, 464 P2d 691 (1970); *Schmidt et al v. City of Cornelius,* 211 Or 505, 316 P2d 511 (1957); 2 McQuillin, Municipal Corporations § 7.10 (3d ed 1966). However, we believe that the initial, threshold determination to be made—whether the proposed annexation is consistent with the statewide planning goals—is a determination which is quasi-judicial in nature. * * *" 279 Or at 256.

We understand the quoted language from *Petersen* to be contrary to plaintiff's contention that the final decision on proposed small tract annexations must be quasi-judicial in nature and cannot be made by the voters.[2] The amicus argues, however, that all of the decisions to be made in connection with this *particular* annexation fell on the quasi-judicial side of the various lines drawn by the Supreme Court in *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979), for determining when quasi-judicial procedures must be followed and when

[2] The proposed annexation in *Petersen* was described by the Supreme Court as a "relatively small tract annexation." 279 Or at 251.

legislative decision-making is permissible. In our view, the amicus' argument begs the question because the amicus does not give enough attention to the inquiry which must precede any application of the *Strawberry Hill* criteria to a decision, *i.e.,* what *is* the decision.

Discussion of two of the amicus' specific contentions will suffice to illustrate. The amicus argues, first, that the final decision on this annexation applied to a closely circumscribed factual situation—thereby meeting one of *Strawberry Hill's* standards for a quasi-judicial decision— because the territory and number of owners affected are small. It is true that the amount and number of owners of the *territory to be annexed* are small; it is not correct that the number of people *in the city* is small. The city contends, and we agree, that the impact of a *final* annexation decision on municipal services, taxes and the like can affect everyone in the city; a final decision therefore differs in the extent of its effect from the initial decision, which *Petersen* requires to be made quasi-judicially, of whether a parcel which is small in size and owned by few persons *can* be annexed consistently with the statewide goals and other applicable land use criteria.

The amicus' second basis for contending that the decision is quasi-judicial under *Strawberry Hill* is that the process in which the city council was involved, *i.e.,* acting on a "triple majority" annexation petition under ORS 222.170,[3] had "to result in a decision" by

---

[3] ORS 222.170 provides:

"(1) The legislative body of the city need not call or hold an election in any contiguous territory proposed to be annexed, or post notice in the contiguous territory, if more than half of the owners of land in the territory, who also own more than half of the land in the contiguous territory and of real property therein representing more than half of the assessed value of all real property in the contiguous territory consent in writing to the annexation of their land in the territory and file a statement of their consent with the legislative body on or before the day:

"(a) The public hearing is held under ORS 222.120, if the city legislative body dispenses with submitting the question to the registered voters of the city; or

the city council, unlike annexations initiated by other statutory methods. Assuming *arguendo* that ORS 222.170 does require a city council to make *some* affirmative decision when the triple majority procedure is followed, the statute nevertheless clearly provides that the city council may refer the proposed annexation to the voters of the city for a *final* decision, and that the voters of the city may petition for referral of the annexation ordinance if the city council does not submit the annexation proposal to them.[4]

■     In sum, we disagree with plaintiff's and the amicus' arguments that Oregon land use statutes or case authority requires the final decision on small tract annexations—or on this particular annexation—to be made in a quasi-judicial proceeding rather than

---

"(b) The city legislative body takes the necessary action to call the annexation election in the city under ORS 222.130, if the city legislative body submits the question to the registered voters of the city.

"(2) If the city legislative body has not dispensed with submitting the question to the registered voters of the city and a majority of the votes cast on the proposition within the city favor annexation, or if the city legislative body has previously dispensed with submitting the question to the registered voters of the city as provided in ORS 222.120, the legislative body shall, by a proper order, resolution or ordinance constituting an official city record, set the final boundaries of the area to be annexed by a legal description and proclaim the annexation, and cause the recorder of the city, or other officer performing the duties of recorder, to make and submit to the Secretary of State:

"(a) A copy of the order, resolution or ordinance,

"(b) An abstract of the vote within the city if votes were cast therein, which shall show the whole number of registered voters voting therein on the annexation, the number of votes cast therein for annexation and the number of votes cast against annexation,

"(c) A copy of the statement of consent of landowners in the territory annexed,

"(d) A copy of the ordinance of the city declaring that no election is required in the city, and

"(e) An abstract of the vote upon the referendum if a referendum petition was filed with respect to the referred ordinance."

[4] The amicus does not explain its apparent understanding that, when a triple majority petition is involved, the Corvallis city charter provision which requires a vote in the city on proposed annexations does not prevail over the statutory provisions which make annexations possible without a vote in the annexing city. ORS 222.111(1) seems contrary to that understanding, and nothing in ORS 222.170 seems to support it.

by popular vote. It follows that plaintiff's due process argument falls with his contention that the final decision had to be quasi-judicial.

■ Plaintiff's and the amicus' final arguments which warrant discussion are, in essence, that the city's comprehensive plan and state planning standards compelled the annexation of plaintiff's property by the city. Plaintiff argues that the city had amended its comprehensive plan in May, 1978, to authorize the medium-high residential use of plaintiff's property which would have been implemented if the property had been annexed, and that the city cannot defeat the legislative decision embodied in the plan amendment by a subsequent vote rejecting annexation of the property. The amicus contends that, in light of the city council's findings and conclusions, LCDC's pre-acknowledgment annexation rule (OAR 660-01-315)[5] foreclosed the city from deciding not to annex the territory, or at least limited the city's discretion to

---

[5] OAR 660-01-315 provides:

"(1) All appropriate goals must be applied during annexation by the city. If the annexation is subject to the jurisdiction of a local government boundary commission, the boundary commission may utilize the findings of the city. The boundary commission, however, remains responsible for ensuring that the annexation is in conformance with the statewide goals.

"(2) For the annexation of lands not subject to an acknowledged plan, the requirements of Goal #3 (Agricultural Lands) and Goal #14 (Urbanization) OAR 660-15-000, shall be considered satisfied only if the city or local government boundary commission, after notice to the county and an opportunity for it to comment, finds that adequate public facilities and services can be reasonably made available; and:

"(a) The lands are physically developed for urban uses or are within an area physically developed for urban uses; or

"(b) The lands are clearly and demonstrably needed for an urban use prior to acknowledgment of the appropriate plan and circumstances exist which make it clear that the lands in question will be within an urban growth boundary when the boundary is adopted in accordance with the goals.

"(3) Lands for which the findings in section (2) of this rule cannot be made shall not be annexed until acknowledgment of the urban growth boundary by Land Conservation and Development Commission as part of the appropriate comprehensive plan."

decide against annexation in such a way that a legislative rather than quasi-judicial decision was inappropriate. Both plaintiff and the amicus argue that the decision not to annex plaintiff's property is inconsistent with statewide planning goals, particularly the Housing Goal and the Urbanization Goal (Goals 10 and 14).[6]

The comprehensive plan amendment upon which plaintiff relies does not *compel* an annexation at the present time. It authorizes a *use.* In *Marracci v. City of Scappoose,* 26 Or App 131, 552 P2d 552, *rev den* 276 Or 133 (1976), we rejected an argument, similar to plaintiff's, that the city of Scappoose was required to permit a higher density residential use than current zoning authorized because the city's comprehensive plan designated the property in question for the more intense use. We stated:

> "In other words, a comprehensive plan only establishes a long-range maximum limit on the possible intensity of land use; a plan does not simultaneously establish an immediate minimum limit on the possible intensity of land use. The present use of land may, by zoning ordinance, continue to be more limited than the future use contemplated by the comprehensive plan. * * *" 26 Or App at 134.

The annexation rule relied on by the amicus also does not require the City of Corvallis to annex plaintiff's property. In the first place, the findings and conclusions of the city council do not clearly show that plaintiff's property meets the rule's *minimum* requirements for *permitting* annexation prior to compliance acknowledgment of the city's comprehensive plan. More fundamentally, the rule does not purport to *require* annexation under *any* circumstances; the

---

[6] Consideration of these arguments is rendered difficult by the fact that neither the record nor the briefs make it clear whether plaintiff and the amicus are relying on the pre- or post-December, 1978, comprehensive plan or both; what either or both of the plans provide; or how, if at all, the December, 1978, plan can have any bearing on an annexation which was rejected by the voters the preceding month. The parties and the amicus *seem* to agree that neither plan has received compliance acknowledgment. ORS 197.251.

rule's purpose appears instead to be to limit the conditions under which a city *may* annex property before it has an acknowledged comprehensive plan and urban growth boundary.

The remaining argument, that the housing, urbanization or other statewide planning goals had a conclusive or limiting effect on this annexation decision, rests on the premise that Corvallis has inadequate land available for low and medium-income housing, and that

"[a]s a practical matter, annexation to the city is a prerequisite to urban services for new urban development. Consequently, annexation is the only practical way for Corvallis to provide vacant, buildable land for needed housing types and densities."

It seems clear that the legislature *can* require that annexations occur under certain circumstances, without discretionary action by the annexing city. The legislature has done so, through ORS 222.850 to 222.915, in the case of annexations necesary to alleviate health hazards. *See West Side Sanitary Dist. v. LCDC (#26780)*, 289 Or 393, 614 P2d 1141 (1980), and companion cases; *Trueblood v. Health Division*, 28 Or App 433, 559 P2d 931, *rev den* 278 Or 621 (1977). However, we decline to construe the statewide planning goals—at least absent an interpretation or enunciation of policy by the responsible agencies— as compelling a particular annexation by a city. *See Norvell v. Portland Area LGBC*, 43 Or App 849, 851-52, 604 P2d 896 (1979); *cf. Neuberger v. City of Portland*, 288 Or 155, 603 P2d 771 (1979).

Affirmed.