Argued and submitted November 10, 1999, affirmed March 1, 2000

In the matter of Tyrone Waters,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

TYRONE WATERS,
*Appellant.*

(9805-64628; CA A102453)

997 P2d 279

Harrison Latto argued the cause and filed the brief for appellant.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Appellant seeks review of an order committing him to the custody of the Mental Health and Developmental Disability Services Division for a period of 180 days. He contends that the trial court erred in basing its order primarily on appellant's stipulation to the commitment on the ground that he was unable to meet his basic needs. For the following reasons, we affirm.

In May 1998, appellant was detained on an emergency psychiatric hold pursuant to ORS 426.232 at Providence Hospital. A physician filed a notification of mental illness with the Multnomah County Circuit Court indicating a belief that appellant had a mental disorder and was in need of emergency treatment. The notification indicated that appellant was acting on delusions, had been off his medications for six months, and was refusing medications. Shortly thereafter, appellant was transferred to Emanuel Hospital, where he continued to refuse medications and began a hunger strike. Several days later, a hearing was held on the question of whether appellant should be committed involuntarily. The court received into evidence the nonhearsay portions of an investigative report prepared pursuant to ORS 426.070. The report indicates that appellant indicated to the investigator that he would not take medications because he disagreed with his doctors, and he would not eat because he was protesting against Emanuel Hospital. The investigator indicated that appellant had been diagnosed as paranoid schizophrenic and also with a delusional disorder, that appellant did not believe he was mentally ill, and that he would not take medications for that reason. The investigator observed that appellant was well-spoken, with good grooming and hygiene, but that his thinking showed signs of disorganization, paranoia and delusions.

Before the hearing, appellant, his attorney, the district attorney, and the investigator who had prepared the report discussed the possibility of appellant stipulating to his commitment and the investigator arranging to transfer appellant from Emanuel to a different hospital. Appellant's counsel explained to the court that his client had chosen to

remain in treatment and that he would stipulate to the commitment based on an inability to meet his basic needs. He further stated that his client would like to be treated at a different hospital but that that might not happen immediately. The court asked appellant if he agreed with his attorney's statements, and appellant indicated that he did. The court then asked appellant about his medications, and appellant indicated that he was taking none. The court asked if he agreed that he had emotional problems that were keeping him in the hospital, and appellant stated that he did. When asked about his mental health problems, appellant explained to the court that there were "disruptive elements going on" in his life and that they had been "having an effect or an impact." When asked if it was affecting his ability to function and deal with day to day activities, appellant responded: "It's causing a great deal of stress."

The court then found that appellant suffered from a mental disorder and required commitment based on his inability to care for his basic needs. The court then asked the investigator about appellant's transfer to a different hospital, and appellant reminded the court that he was on a hunger strike because he did not wish to be kept at Emanuel Hospital.

Also present at the hearing were two mental health examiners. Neither participated verbally during the hearing. One submitted a report to the court that indicated, by checked boxes, that the examiner believed that appellant suffered from a mental disorder, was unable to meet his basic needs, and would not cooperate and benefit from voluntary treatment. The other submitted a report to the court that contained no check marks in boxes but indicated a provisional diagnosis of paranoid schizophrenia. That report also noted that appellant was not taking his medications and that he stipulated to his inability to provide for his basic needs. Both examiners' reports were signed, but neither was sworn.

On appeal, appellant makes four assignments of error, none of which was preserved in the court below. In one assignment of error, he contends that the trial court erred in accepting the reports of the two mental health examiners because the reports were unsworn. The other assignments of

error relate to appellant's stipulation. He argues first that, due to the nature of a mental commitment proceeding, a court may never accept a factual stipulation but is required to take evidence. He argues next that, in any event, the court erred in accepting his stipulation without first establishing, with the help of mental health professionals, that appellant was competent to enter into the stipulation. Finally, appellant argues that the record, in the absence of the stipulation, fails to establish by clear and convincing evidence that he was unable to provide for his basic needs. Appellant further contends that, due to the nature of his claims, "they cannot have been preserved."

Appellant relies on *State v. Allison*, 129 Or App 47, 877 P2d 669 (1994), for the broad proposition that errors in mental commitment proceedings need not be preserved in the trial court for the issues to be considered on appeal. We disagree that *Allison* stands for so broad a proposition. In *Allison*, as in the present case, the appellant stipulated in the trial court that he met the statutory criteria for commitment. The trial court accepted the stipulation but failed to provide the appellant with the mandatory advice of rights required by ORS 426.100(1). *Id.* at 49. We held that the advice of rights was an "integral part of the procedure," but went on to state:

> "In this case, the court held an extremely brief hearing and, although the court accepted appellant's counsel's offer of stipulation to the essential facts, there was almost no communication between the court and appellant. The closest the court came to fulfilling the requirements of ORS 426.100(1) was when it told appellant that the hearing was being held to determine what was going to happen 'over the next several days.' That is insufficient to fulfill the statutory command. Whether or not appellant is represented by counsel, the court must inform appellant of the nature and possible outcome of the proceedings. The fact that appellant stipulated to the facts and to his commitment may allow the court to expedite some aspects of the hearing procedure, but it does not relieve the court of its duty to advise appellant of the nature and possible outcome of the proceedings, as well as his or her rights at the hearing." *Id.* at 50 (citation omitted).

As to appellant's contention that the court's acceptance of the mental examiners' signed but unsworn reports

was reversible error, we disagree that it was an error relating to an "integral part of the procedure" that need not be preserved in the trial court. ORS 426.120 requires that the examiners make their "reports in writing, under oath, to the court[.]" Neither of the reports submitted pursuant to this section was submitted under oath in the present case. We agree that this is error, and even that it is error "apparent on the face of the record," ORAP 5.45(2), because the requirements of the statute are not reasonably in dispute. However, we disagree with appellant that *Allison* requires that we exercise our discretion to correct such an error, and, for the following reasons, we decline to do so. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (in deciding whether to address unpreserved issue, court considers "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way").

■     One of the primary purposes of the preservation requirement is to permit lower courts the opportunity to correct their own errors. Had appellant brought this error to the trial court's attention, the error could easily have been avoided. As to the gravity of the error, appellant does not contend that the error was anything other than a technical one; he does not call into question the substance of the examiners' reports, and he does not assert that the error affected the outcome of the case in any way. Under the circumstances, we do not exercise our discretion to correct the trial court's error in receiving the examiner's signed but unsworn reports.

We next turn to appellant's assignments of error pertaining to his stipulation that he was unable to meet his basic needs. Appellant argues that, due to the nature of an involuntary commitment proceeding, a court may never rely on a stipulation by the allegedly mentally ill person. Alternatively, appellant argues that a court may rely on a stipulation by an allegedly mentally ill person only if the court, with the assistance of mental health professionals, determines that the mentally ill person is competent to enter into such a stipulation. Again, appellant argues that, due to the nature of his

claims, they could not have been preserved in the court below and are cognizable by this court under the rationale of *Allison*.

■    Again, however, we disagree with appellant about the preservation issue. Those alleged errors are exactly the type that never would have occurred had appellant not affirmatively invited them. In other words, no stipulation could have occurred had appellant or his counsel questioned the propriety of such a stipulation in the trial court.[1]

■    In any event, any error pertaining to the stipulation would not qualify as error apparent on the face of the record. ORAP 5.45(2). To qualify as plain error, the legal point would need to be "obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Those alleged errors do not meet that standard. In *Allison*, it was not disputed that the trial court failed to follow specific statutory directives about providing advice of rights to the allegedly mentally ill party. By contrast, appellant points to no authority, either from statutes or case law, in support of the proposition that stipulations such as his are impermissible, or that they are impermissible unless a court, *sua sponte*, makes a competency determination after consultation with mental health professionals. Certainly, ORS chapter 426, which governs this type of mental commitment proceeding, contains no such suggestion. In fact, ORS 426.295, which provides specifically for competency hearings of those committed to state hospitals, declares that "[n]o person admitted to a state hospital for the treatment of a mental illness shall be considered by virtue of the admission to be incompetent." ORS 426.295(1). Appellant points to no precedent for the proposition that a court may not accept a factual stipulation under circumstances such as these, or under other circumstances for that matter. Appellant also cites no authority for the proposition that a court must solicit advice from mental health professionals before accepting a factual stipulation. As

---

[1] Appellant makes no argument on appeal that his due process rights were violated because trial counsel provided inadequate assistance by suggesting the stipulation. *See State v. Pieretti*, 110 Or App 379, 382, 823 P2d 426, *rev den* 313 Or 354 (1991) (allegedly mentally ill person's claim of inadequate assistance of trial counsel was cognizable on direct appeal).

respondent points out, trial courts regularly make determinations of competency, such as the competency of a child or a disabled person to testify, without the assistance of mental health professionals.[2] In fact, in *Allison* itself, we noted that the "fact that appellant stipulated to the facts and to his commitment may allow the court to expedite some aspects of the hearing procedure[.]" 129 Or App at 50. In short, we find that it is, at the very least, "reasonably in dispute" whether a trial court may accept a factual stipulation by an allegedly mentally ill person in an involuntary commitment proceeding or whether a trial court may accept such a stipulation only after consulting with mental health professionals. Because appellant's legal points are reasonably in dispute, he has identified no error apparent on the face of the record that we may reach in the first instance on appeal.

The success of appellant's final assignments of error that, in the absence of the stipulation, the record does not support the trial court's conclusion that he is unable to meet his basic needs, depends entirely on the success of his assignments of error pertaining to the stipulation. Thus, we need not reach the final assignment of error.

Affirmed.

---

[2] As set forth above, the court in this case did engage in a colloquy with appellant to determine if he understood the nature of the proceedings and the effect of the stipulation. Appellant does not challenge the adequacy of that colloquy in general but only asserts that the trial court was a "layperson" who could do no more than make "educated guesses" about appellant's competency and, therefore, required input from mental health professionals before accepting the stipulations.