Argued and submitted June 4, 1998; resubmitted en banc February 16, affirmed
April 19, 2000

# In the Matter of Andrea Lucy Buffum,
## Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
### *Respondent,*

*v.*

## ANDREA LUCY BUFFUM,
### *Appellant.*

## (M97-0088; CA A99442)

999 P2d 541

Henry R. Dickerson, Judge pro tempore.

Hilary E. Berkman argued the cause and filed the brief for appellant.

Justin R. Boose, Certified Law Student argued the cause for respondent. With him on the brief were Jas. Adams, Assistant Attorney General, Hardy Myers, Attorney General and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, and Brewer, Judges.

DEITS, C. J.

Edmonds, J., concurring.

Armstrong, J., dissenting.

## DEITS, C. J.

Appellant, an allegedly mentally ill person, appeals an order in which the trial court found that she is mentally ill, as defined in ORS 426.005(1)(d), and committed her to the Mental Health Division for a period not to exceed 180 days. ORS 426.130(1)(b)(C). We affirm.

ORS 426.100(1) requires a trial court to advise an allegedly mentally ill person, at the time that the person is brought before the court, of the following things:

"(a) The reason for being brought before the court;

"(b) The nature of the proceedings;

"(c) The possible results of the proceedings;

"(d) The right to subpoena witness; and

"(e) The person's rights regarding representation by or appointment of counsel."

Appellant argues, in her first assignment of error, that the advice that the court gave her at the beginning of the hearing was insufficient to satisfy that statute. The court stated, *inter alia*:

"Ms. Buffum, this is the time that * * * has been set for a hearing that will be held to *determine whether or not that you're mentally ill*. The Court is required by law—I'm required by law to give you that information, although I'm sure you're aware of it.

"At these proceedings the witnesses will be called. It will be the State's burden of *showing that you are mentally ill, as that expression is defined in the statutes*, and they'll do that by calling witnesses in and perhaps presenting other evidence."[1] (Emphasis added.)

Appellant contends that, although the court's statement informed her that the hearing would be directed at determining whether she was mentally ill, within the meaning of the applicable statutes, the court was required and failed to further "inform appellant that to be found mentally

---

[1] In parts of the advice that are not implicated by the issues we will address, the court also gave appellant other information pursuant to ORS 426.100(1).

ill under the statute she must be found to be either 'a danger to herself or others' or 'unable to provide for her basic personal needs.'" *See* ORS 426.005(1)(d)(A), (B).[2] Appellant asserts that the court's failure to provide that additional information violated its obligation to advise about both the "reason for [her] being brought before the court" and the "nature of the proceedings."

■    The first aspect of appellant's argument requires little comment. The court explained to her that the reason for her being before the court was to determine whether she was mentally ill and, if so, whether she should be involuntarily committed for up to 180 days. Appellant's contention that that information was insufficient under ORS 426.100(1)(a) is not tenable. However, whether the advice was adequate to apprise appellant of the nature of the proceedings, as required by ORS 426.100(1)(b), presents a more colorable question.

■    Beginning with the statutory language, the meaning of "proceedings" is clear in this context; it refers to the hearing that the trial court will conduct after giving the required statutory advice. The applicable dictionary definitions of "nature" are "the essential character or constitution of something," especially "the essence or ultimate form of something" and "the distinguishing qualities or properties of something[.]" *Webster's Third New Int'l Dictionary*, 1507 (unabridged ed 1993). Thus, the statute required the trial court to advise appellant of the essence or the essential character of the hearing that it was about to conduct.

■    Appellant offers little explanation of *why* she perceives the term "nature of the proceedings" in the context of ORS 426.100(1) as encompassing a requirement that an allegedly mentally ill person be informed by the court of the various specific and substantive bases on which a finding of "mental illness" may be based. The dissent, however, offers more of an explanation. It equates the essential character of a proceeding with the specific issues that the court will be

---

[2] There was no assertion that appellant was chronically mentally ill as defined in ORS 426.005(1)(d)(C).

called upon to decide in it. We disagree with that understanding. In our view, the "essence" of a thing refers to its basic character, not to its refinements and certainly not to the specific variations of it that may or may not be presented in particular instances. Hence, as we read the language of the statute, the term "nature of the proceedings" in ORS 426.100(1)(b) does not encompass particularized advice about the legal and evidentiary standards that are applicable in the proceedings. Rather, the statutory language supports the view that what is required is a description of the nature of the proceedings in the most basic and general of terms, such as those that the trial court used here.

The context points to the same interpretation. ORS 426.100(1) requires the court to advise the allegedly mentally ill person of five separate items of information. Each of those items relates to a matter that could consume a full semester of a law school course. However, each could also contemplate a quantum of general and comprehensible information that could be communicated in a single sentence or two and that, taken together, could provide an allegedly mentally ill layperson with sufficient productively usable information to enable the person to take the actions necessary to protect his or her interests. We think that the legislature intended the statute to fulfill the latter purpose.

Further, ORS 426.100(1) must be viewed as part of a complex statutory scheme that serves to protect the rights of allegedly mentally ill persons and not as the sole source of protection. Most importantly, ORS 426.100(3) provides for the right to representation by and appointment of qualified counsel—a right that is virtually more difficult to waive than is the corresponding right of defendants in criminal cases. It belabors the obvious to say that an attorney who, in the words of ORS 426.100(3)(a), must possess "skills and experience commensurate with the nature of the allegations and complexity of the case," will be fully aware of the legal and evidentiary particulars that the majority holds the court must include in its preliminary advice to the allegedly mentally ill layperson.

Ultimately, neither appellant nor the dissent bring anything except policy considerations and postulations to bear in support of their view that the "nature of the proceedings" under ORS 426.100(1)(b) must include a description of the legal criteria for a finding of mental illness under ORS 426.005(1)(d). The dissent cites a number of Oregon appellate decisions where phrases such as "nature of the proceedings" and analogous phrases appear, and the dissent attempts to piece language from those opinions together in a way that supports its view that "nature of the proceedings" is all but synonymous with the specific issues and evidence in the proceedings. However, far and away the most frequent use that the appellate courts have made of the phrase "nature of the proceedings" and its analogs has been to describe classifications and distinctions of the most basic and substantively unadorned kinds. *See, e.g., Hartford v. Aetna / Mt. Hood Radio*, 270 Or 226, 229, 527 P2d 406 (1974) (legal versus equitable); *In re J. Kelly Farris*, 229 Or 209, 218, 367 P2d 387 (1961) (civil versus criminal nature of bar disciplinary proceeding); *Harney Valley Irr. Dist. v. Bolton*, 109 Or 486, 492, 221 P 171 (1923) (*in rem* proceeding); *Stewart v. City of Corvallis*, 48 Or App 709, 617 P2d 921 (1980), *rev den* 290 Or 491 (1981) (quasi-judicial proceeding).

Appellant and the dissent also seek support in *State v. Allison*, 129 Or App 47, 877 P2d 660 (1994). We held in that case that, notwithstanding the fact that the allegedly mentally ill person was represented by counsel and had "stipulated to the facts and to his commitment," *id.* at 50, the trial court committed reversible error by failing to provide advice pursuant to ORS 426.100(1). *Allison* is simply inapposite. It says and suggests nothing about the substance of the information that a court must provide when it *does* advise an allegedly mentally ill person pursuant to ORS 426.100(1). We hold that the trial court satisfied the requirements of ORS 426.100(1)(b) by advising appellant that the hearing will be held "to determine whether or not * * * you're mentally ill" (along with apprising her that testimony and other evidence would be presented).

In her second assignment of error, appellant challenges the correctness of the trial court's findings and its resulting conclusion that she is mentally ill. On *de novo* review, we agree with the trial court.[3]

Affirmed.

**EDMONDS, J.,** concurring.

I concur with the majority's result only because the alleged mentally ill person (Buffum) with the assistance of counsel actually litigated the issue of whether the state had proven that she was "mentally ill." In my view, due process is not complied with unless the person subject to involuntary commitment is apprised of the statutory criteria which will be applied in the hearing to determine if the person is mentally ill within the meaning of the statute. Otherwise, the person is unaware of what he or she must defend against. Merely telling the person that "this is a hearing to determine whether you are mentally ill" does not comport with due process because it does not inform the person that more than a mental illness must be demonstrated to satisfy the requirements for a commitment. That is why the reading of ORS 426.100 to the person by itself does not satisfy due process. However, the hearing in this case took place after Buffum and her counsel had a week to prepare. During the hearing, Buffum called witnesses on her behalf and cross-examined the state's witnesses on whether she was able to provide for her basic needs. Under those circumstances, it is apparent that she was not denied due process because of the failure of the court to explain the statutory criteria that is part of "the nature of the proceeding" under ORS 426.100 and to define for Buffum at the outset of the hearing what "mentally ill" means for purposes of involuntary commitments.

**ARMSTRONG, J.,** dissenting.

ORS 426.100(1) is one of the procedures that the legislature created to protect allegedly mentally ill persons who face involuntary mental commitment and its accompanying massive curtailment of liberty. The required advice of rights is an integral part of the legislature's attempt "to ensure that

---

[3] No purpose would be served by a publication of the facts.

all allegedly mentally ill persons get the benefit of a full and fair hearing[.]" *State v. Allison,* 129 Or App 47, 50, 877 P2d 660 (1994). The majority, however, has taken something that the legislature designed as a protection and converted it into a trap. It allows the trial court to give advice about the nature of the proceeding that is at best a half-truth and that, in context, is positively misleading. Because I cannot join the majority in destroying what the legislature has done, I dissent.

The applicable statutes clearly establish the issues at an involuntary mental commitment proceeding: before it may involuntarily commit a person, the trial court must find, by clear and convincing evidence, that the person is "mentally ill." ORS 426.130(1)(b). That does not mean, however, that the court need find only that the person suffers from a mental disorder, as the common meaning of the phrase would suggest. Rather, the statutes give that phrase additional meanings that are essential for understanding the issues that the court must decide. To find a person "mentally ill," the court must find not only that the person suffers from a mental disorder but also that the person is either "[d]angerous to self or others," ORS 426.005(1)(d)(A) or "[u]nable to provide for basic personal needs and * * * not receiving such care as is necessary for health and safety." ORS 426.005(1)(d)(B).[1] That is, the statute does not focus merely on the person's *status* as mentally ill; rather, in order for the person to be subject to commitment, that status must have had specific *results* that make the person either dangerous to self or others or unable to provide for him or herself. Knowing that the disease must produce certain results in order to justify commitment is essential to defending a mental commitment case. In many, if not most, of the reported decisions the argument is primarily about whether the person's conceded mental illness has produced results that would authorize commitment.

In this light, the trial court's attempt to comply with ORS 426.100(1)(b), which required it to inform appellant of the "nature of the proceedings," was not simply patently inadequate but pointed appellant in the wrong direction. The

---

[1] For the purposes of this case I do not need to consider the third ground for commitment, that the person is chronically mentally ill. *See* ORS 426.005(1)(d)(C).

court told appellant that it was the state's burden to show "that you are mentally ill, as that expression is defined in the statutes[.]" It made no attempt to tell appellant how the statutes defined the phrase. The conclusion that appellant, and anyone else who was not familiar with the statutes, would draw from the court's advice is that the issue at the hearing was whether she had a mental illness. She would have no reason to think about the effect that the mental illness had on her relations with others or on herself. The advice, thus, misled appellant about the issues at the hearing and the nature of the defense that she should present.[2] To say that that misadvice accurately describes the nature of the proceedings both gives that phrase an unnecessarily crabbed and cramped construction and ignores the legislature's purpose in adopting it.

Both the normal meanings of the relevant words and the way that courts have used the phrase in similar contexts show that the "nature of the proceedings" must include the essential issues that the court will decide at the hearing. After a *pro forma* trip to the dictionary, the majority correctly concludes that "the statute required the trial court to advise appellant of the essence or the essential character of the hearing that it was about to conduct." 166 Or App at 555. However, by giving advice that directed appellant's attention away from the crucial issues, the trial court failed to explain the nature of the proceedings.

The Supreme Court and we have used "nature of the proceedings" in ways that are consistent with how the legislature used the phrase in ORS 426.100(1)(b). In *Dennis v. Employment Div.*, 302 Or 160, 728 P2d 12 (1986), the Supreme Court responded to an argument that requiring Employment Division hearings referees to inquire fully into

---

[2] It is not difficult for a court to give complete and helpful advice. The briefs in *State v. Grellert*, 144 Or App 201, 925 P2d 161 (1996), show that the trial court in that case told the appellant that

"[t]he purpose of today's hearing is for me to determine whether or not you are mentally ill. *That is, whether or not you suffer from a mental disorder and as a result are unable to prepare for your own basic needs or present a danger to yourself or others*." (Emphasis supplied.)

We described that statement as advising the appellant of the nature of the proceedings. *Id.* at 203. A similar statement would have been adequate in this case.

the facts of each case would be unduly burdensome by pointing out that the referee's duty was only to ensure that relevant evidence appeared in the record. "The necessary inquiry should be apparent from the *nature of the proceedings* and the evidence adduced." 302 Or at 166 (emphasis supplied). Every unemployment compensation hearing, of course, follows essentially the same procedure; the difference in the nature of one proceeding from another lies in the substance of the issues that they consider. The court meant, thus, that the referee can tell from the nature of the proceedings—that is, the issues raised and the evidence presented—how much additional inquiry is necessary. In *State v. Sanchez*, 160 Or App 182, 188, 981 P2d 361, *rev den* 329 Or 318 (1999), we agreed with the concurrence that a properly certified interpreter is important for a criminal defendant to understand the nature of a criminal proceeding and that that understanding is essential to a fair disposition of the criminal charges. Thus, the nature of a criminal proceeding includes the issues actually involved, not simply the procedures used. Finally, in *Jordan v. Brazier Forest Products*, 152 Or App 15, 952 P2d 560 (1998), we held, in discussing the proper appeal route for certain orders in workers' compensation cases, that that route depended on the "nature of the proceeding," by which we meant the kinds of issues that were the subject of the order. 152 Or App at 19-20.

In short, the purpose of the statutory requirement that the court give the advice, the dictionary meaning of "nature of the proceedings," and previous appellate uses of that term all show that, in order to comply with the statute, the trial court must inform the allegedly mentally ill person of the statutory meaning of "mentally ill." This is not, as the majority suggests, an expression of my policy preferences; it is inherent in the *legislature's* policy decision to require the court to give meaningful and realistic advice to an allegedly mentally ill person. The only judicial policy preference involved in this case is the majority's decision not to enforce the legislature's decision to require what the majority apparently considers to be a meaningless exercise.

Judge Edmonds agrees that the trial court erred. *See State v. Zabransky*, 166 Or App 672, 998 P2d 805 (2000) (Edmonds, J., dissenting). However, in his concurrence in

this case he argues that its error was harmless because appellant actually litigated the issue of whether she was mentally ill under the statutory definition. In essence, he relies on counsel's presumed advice to make up for the court's failure to comply with the statute. That argument avoids the responsibility that the legislature expressly places on trial courts to ensure fundamental fairness in a mental commitment proceeding. The court has that responsibility under the statute whether or not due process would require precisely the same result.

As we pointed out in *Allison*, the requirement that the *court* give the advice is one of the procedures that legislature developed in order to ensure that there will be a full and fair hearing before anyone loses his or her liberty by an involuntary mental commitment. If the legislature had thought it sufficient to rely on counsel to give that information, it would not have needed to require the court to advise the person of anything other than the right to counsel. Instead of that approach, however, the legislature relied on the court, independently of any assistance from counsel, to inform the person of the rights that the statute lists. Counsel's advice and actions at trial are irrelevant both to whether the court has fulfilled its duty and to whether the court's failure requires reversal. The error simply cannot be harmless.

In *Allison* the appellant, who was represented by counsel, stipulated to an involuntary commitment. We nevertheless reversed the order of commitment on the ground that the court had not given the required advice. We did not suggest that counsel's active involvement in the proceeding, including in the appellant's decision to stipulate to commitment, was relevant to our disposition of the case.

In *Grellert*, the advice that the trial court gave was generally adequate, but it failed to tell the appellant of his right to subpoena witnesses. We stated that the "court's advice of rights here was not complete and, therefore, appellant did not receive that benefit. *Accordingly, we remand this case for further proceedings." Grellert*, 144 Or App at 203 (emphasis supplied). Although, as the briefs show, the appellant was represented by counsel, we reversed the commitment without concerning ourselves with whether counsel

might have already given him the missing information or what actually happened at the hearing.[3] The statute requires that the *court* give the advice. Judge Edmonds' suggestion that the court's failure to do so can be harmless error is inconsistent with that requirement.[4]

For these reasons, I respectfully dissent from the majority's decision.

---

[3] The briefs indicate that the appellant in *Grellert* was not only represented by appointed counsel at the time that the court gave him the inadequate advice, but also had a Ph.D. in biochemistry and had worked for OSHA in California for 18 years, a job that one would expect to give him some understanding of legal procedure.

[1] This situation is analogous to the requirement in Article I, section 11, of the Oregon Constitution, and ORS 136.001(2) that a defendant may waive a jury trial only in writing. We routinely enforce that requirement and reverse convictions without regard to whether the defendant had counsel in the trial court. *See, e.g., State v. Huntley,* 112 Or App 22, 827 P2d 918 (1992); *State v. McDaniel,* 96 Or App 337, 772 P2d 951, *rev den* 308 Or 382 (1989).