Argued and submitted January 20, reversed May 17, 2000

## In the Matter of Devin Burge,
## Alleged to be a Mentally Ill Person.

### STATE OF OREGON,
*Respondent,*

*v.*

### DEVIN BURGE,
*Appellant.*

### (98-05-1567; CA A102441)

1 P3d 490

Bob Pangburn argued the cause and filed the brief for appellant.

Lainie Block, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and John T. Bagg, Assistant Attorney General.

Before Haselton, Presiding Judge, and Edmonds and Wollheim, Judges.

HASELTON, P. J.

Edmonds, J., dissenting.

## HASELTON, P. J.

Appellant seeks reversal of an order adjudicating him to be chronically mentally ill, ORS 426.005(1)(d)(C), as well as a danger to himself or others, ORS 426.005(1)(d)(A), and committing him to the Oregon Mental Health and Developmental Disability Services Division. The state concedes that the trial court erred in failing to advise appellant of his rights under ORS 426.100(1),[1] notwithstanding his counsel's ostensible "waiver" of advice of rights. As explained below, we accept the state's concession of error and reverse.

At the commitment hearing, the following colloquy occurred:

"THE COURT: Mr. Birnbaum I have an advice of rights form. Do you want me to read that to him or would you waive?

"MR. BIRNBAUM [Appellant's Counsel]: Your Honor I'll waive the reading of the advice of rights but Mr. Burge has asked me to point out to the Court that he's been in custody more than five days and that he was suppose to have been let out, this hearing was supposed to [be] held with[in] five days and he's indicated that he would like to put on the record that he—he needs to, that the case should be dismissed.

"THE COURT: Alright, it's so noted."

The court, after receiving evidence, subsequently entered the order of commitment.

■ On appeal, appellant contends that the trial court erred in determining him to be chronically mentally ill,

---

[1] ORS 426.100(1) provides:

"At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:

"(a) The reason for being brought before the court;

"(b) The nature of the proceedings;

"(c) The possible results of the proceedings;

"(d) The right to subpoena witnesses; and

"(e) The person's rights regarding representation by or appointment of counsel."

because he was not interviewed by a mental health investigator before the commitment hearing. The state disputes that issue but concedes that "this case should be reversed and remanded based upon the trial court's failure to fully advise appellant of his rights under ORS 426.100." We accept the state's concession and, consequently, do not reach and address appellant's arguments. *Cf. State v. Jones*, 129 Or App 413, 416, 879 P2d 881 (1994); *id.* at 417 (Riggs, J., concurring); *id.* at 419 (Haselton, J., concurring) (addressing effect of state's concession of error on court's exercise of discretion to reach and correct "plain error" under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991)).

The trial court's failure to advise appellant of his rights under ORS 426.100(1) was "an error of law apparent on the face of the record." ORAP 5.45(2). *See State v. May*, 131 Or App 570, 888 P2d 14 (1994); *State v. Allison*, 129 Or App 47, 877 P2d 660 (1994). In *May*, we considered whether a lawyer's failure to object to the court's failure to advise the allegedly mentally ill person of her hearing rights waived any error in that regard. We concluded that it did not:

> "[A] lawyer's failure to object, standing alone, does not constitute a waiver of the right to be advised of the rights pertaining to the conduct of a civil mental commitment hearing. Those are mandatory advisements specifically designed to ensure that the alleged mentally ill person receives the benefits of a full and fair hearing. *The court must either advise the alleged mentally ill person directly regarding those rights or conduct an examination on the record to determine whether a valid waiver of the right to be advised has been knowingly and voluntarily made.* Here, the court neither advised appellant nor conducted any such examination." *May*, 131 Or App at 571 (emphasis added).

The same principle controls here. Although the alleged "waiver" in *May* was silent, and the "waiver" here was oral, *May*'s holding is unconditional: When faced with an ostensible waiver of the explanation of rights under ORS 426.100(1), "[t]he court *must* * * * conduct an examination on the record to determine whether a valid waiver of the right to

be advised has been knowingly and voluntarily made." *Id.* at 571 (emphasis added).[2] Here, the trial court failed to do so.

■ We note, moreover, that, given *May*, counsel's "waiver" differed materially from the appellant's stipulation to commitment in *State v. Waters*, 165 Or App 645, 997 P2d 279 (2000). In *Waters*, the stipulation pertained to the sufficiency of evidence to support commitment and did not encompass a waiver of the recitation of the appellant's hearing rights. We declined to consider the appellant's unpreserved challenges to that stipulation, observing, *inter alia*:

> "Those alleged errors are exactly the type of errors that never would have occurred had appellant not affirmatively invited them. In other words, no stipulation could have occurred had appellant or his counsel questioned the propriety of such a stipulation in the trial court." 165 Or App at 651.

Here, in contrast, counsel's expression of "waiver" merely triggered *the court's* ensuing obligation under *May* to conduct the prescribed "examination of the record" into whether waiver was, in fact, knowing and voluntary. That is, when faced with counsel's ostensible waiver of the advice of rights, the court had an independent judicial obligation to inquire of appellant as to the voluntariness of that purported "waiver." Without that inquiry, the "waiver" was ineffective, and the court was required to advise appellant of his rights.

■ The trial court failed either to "conduct [the] examination on the record" prescribed in *May* or to inform appellant of his rights. That was reversible error. *See May*, 131 Or App at 571.[3]

---

[2] *May* does not describe the content of the required inquiry. Ironically, a reasoned inquiry into whether the person to be committed has knowingly and voluntarily waived the reading of rights may well require a recitation of the rights themselves.

[3] The dissent takes issue with our reasoning, asserting that (1) our analysis cannot be squared with *State v. Buffum*, 166 Or App 552, 999 P2d 541 (2000); and (2) in the absence of an explicit legislative directive, a requirement of knowing and voluntary waiver should not be judicially implied. Both of those premises fail.

First, *Buffum* was qualitatively different. There, the question was not whether the court had given *any* advice of rights, but whether the court conveyed *sufficient* information to make that advice of rights meaningful. As we explained in *Buffum*:

> "Appellant and the dissent also seek support in *State v. Allison*, 129 Or App 47, 877 P2d 660 (1994). We held in that case that, notwithstanding the fact

Reversed.

**EDMONDS, J.,** dissenting.

The state concedes that the advice required by ORS 426.100(1)[1] was not given in this case. The remaining question is whether the requirement under the statute was waived, so that the involuntary commitment order should be affirmed. A "waiver" is a voluntary relinquishment of a known right. When a right under a statute is waived, the effect is to satisfy the purpose of the statute. The purpose of ORS 426.100(1) is "to ensure that all allegedly mentally ill persons get the benefit of a full and fair hearing before that person is committed." *State v. Allison*, 129 Or App 47, 50, 877 P2d 660 (1994).[2]

The majority holds that the legislature intended that no waiver by counsel of an alleged mentally ill person of an explanation of rights under ORS 426.100(1) even in the

---

that the allegedly mentally ill person was represented by counsel and had 'stipulated to the facts and to his commitment,' *id.* at 50, the trial court committed reversible error by failing to provide advice pursuant to ORS 426.100(1). *Allison* is simply inapposite. It says and suggests nothing about the substance of the information that a court must provide when it *does* advise an allegedly mentally ill person pursuant to ORS 426.100(1)." 166 Or App at 557 (emphasis in original).

Thus, the issue in *Buffum* differed materially from that in *Allison* and *May*—and this case—where the court gave *no* advice of rights.

Second, the dissent's real dispute is with *May*. Even if, as the dissent implicitly suggests, this is an area inviting wholesale legislative overhaul, the fact remains that, in *May*, we did impose a requirement that the court engage in "on the record" inquiries into whether an ostensible waiver of the advice of rights is, in fact, knowing and voluntary. Unless we are going to overrule *May*, that is the law.

[1] ORS 426.100(1) provides:

"At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:

"(a) The reason for being brought before the court;

"(b) The nature of the proceedings;

"(c) The possible results of the proceedings;

"(d) The right to subpoena witnesses; and

"(e) The person's rights regarding representation by or appointment of counsel."

[2] The holding in *Allison* is predicated on the understanding that compliance with ORS 426.100(1) furthers due process of law under the Fourteenth Amendment. 129 Or App at 49. A stipulation by counsel in the presence of the alleged mentally ill person in the hearing and on the record does not impinge on due process.

presence of the alleged mentally ill person will ever be effective in an involuntary mental commitment hearing. According to the majority, the trial court must either give the advice in the language of the statute or make an inquiry of the alleged mentally ill person to ascertain that he or she is aware of the rights under the statute and that the person gives them up voluntarily before the requirement under the statute is deemed waived.

The majority's holding in this case and our opinion in *State v. Buffum,* 166 Or App 552, 999 P2d 541 (2000), reach inconsistent interpretations of ORS 426.100(1) about the role of an alleged mentally ill person's counsel in an involuntary commitment proceeding. In *Buffum,* the alleged mentally ill person argued that the advice that the court gave her was insufficient to satisfy ORS 426.100(1) because it did not advise her of what the state had to prove in order to demonstrate that she was "mentally ill" for purposes of an involuntary commitment. The trial court told the alleged mentally ill person that "[i]t will be the state's burden of showing that you are mentally ill, as that expression is defined in the statutes." We held that advice sufficient under ORS 426.100(1) because her counsel could explain the requirements of the law to her.

> "Further, ORS 426.100(1) must be viewed as part of a complex statutory scheme that serves to protect the rights of allegedly mentally ill persons and not as the sole source of protection. Most importantly, ORS 426.100(3) provides for the right to representation by and appointment of qualified counsel—a right that is virtually more difficult to waive than is the corresponding right of defendants in criminal cases. It belabors the obvious to say that an attorney who, in the words of ORS 426.100(3)(a), must possess 'skills and experience commensurate with the nature of the allegations and the complexity of the case,' will be fully aware of the legal and evidentiary particulars that the majority holds the court must include in its preliminary advice to the allegedly mentally ill layperson." *Buffum*, 166 Or App at 556.

Our holding in *Buffum* necessarily implies that the advice from an alleged mentally ill person's counsel can supplant the advice under ORS 426.100(1) when the person is

informed of the substantive requirements for an involuntary mental commitment.[3] But under the majority's ruling, the waiver of an alleged mentally ill person as to the advice of rights required under ORS 426.100(1) spoken through the lips of counsel while in the presence of the alleged mentally ill person is without efficacy. The majority provides no rationale for its holding other than its reliance on *State v. May*, 131 Or App 570, 888 P2d 14 (1994), for why the legislature would have contemplated such a distinction, and I am aware of none. *May* is a per curiam opinion in which the state conceded that, under *Allison*, the trial court was required to give the advice under the statute. However, the state contended that the trial court's failure was waived by the alleged mentally ill person's counsel's silence when he did not make any objection to the continuation of the proceeding. We rejected that argument, saying that the court was required either to give the advice or to conduct an examination on the record regarding any waiver. This case is quite different from *May* because, here, counsel made an express waiver of the requirements of the statute during the hearing and on the record. An express waiver satisfies the legislature's goal under ORS 426.100(1) of apprising the alleged mentally ill person of what he or she must defend against. It is difficult to conceive why counsel's waiver in this case is any less enforceable than any other waiver made by counsel on the record during trial in any other kind of case.[4]

The extension of the holding in *May* to the facts in this case is, in the language of *Buffum*, a holding that is

---

[3] We held in *State v. Waters*, 165 Or App 645, 997 P2d 279 (2000), that a stipulation by the alleged mentally ill person's counsel regarding the sufficiency of the evidence to support an involuntary commitment will not permit a challenge to the sufficiency of the evidence on appeal because, by the stipulation, the alleged mentally ill person invited the court to make the commitment. The import of that holding is that the liberty interests of the alleged mentally ill person are not necessarily impinged by the procedure of permitting counsel as the person's representative to enter into the stipulation. .

[4] According to the majority, the issue in *Buffum* is "qualitatively different," from this case, because here, unlike in *Buffum*, the court gave no advice of rights. 167 Or App at 316-17 n 3. That is a distinction without a substantive difference. Whether an alleged mentally ill person is informed of the legal requirement for involuntary commitment by the court, or by his or her counsel, the result is the same; the person is given information that provides the necessary knowledge to marshall a defense to the allegations.

based on the majority's "policy considerations and postula-tions,"[5] rather than on an expression of the intention of the legislature. The end result projects a somewhat schizo-phrenic view of the statutory scheme for involuntary commit-ments. Counsels for alleged mentally ill persons can by stip-ulations on behalf of, or by advice to, their clients satisfy some of the requirements of the commitment process, but not all. There is a better way to interpret ORS 426.100(1) than by piecemeal judicial fiat.

ORS 426.100(1) should be understood in accordance with its language like any other statute. To ascertain the leg-islature's intent, we should interpret it as it reads and not add requirements to it or delete language from it. ORS 174.010. As with other statutes or constitutional rights, the statute should be subject to the doctrine of waiver when the requirements of waiver are met (the voluntary relinquish-ment of a known right). The statute requires the trial court to advise the alleged mentally ill person of why he or she is before the court, what is at stake in the proceeding, and of certain procedural rights including the right to subpoena wit-nesses and the right to be represented by counsel. Most importantly, there is nothing in the language of the statute to indicate that the legislature requires a personal examination of the alleged mentally ill person under ORS 426.100(1) in order to accept a waiver of the mandated advice.[6] Not unlike the application of statutory requirements in other kinds of cases, we should reverse the commitment order if the record on appeal does not demonstrate compliance with the statute or a voluntary and knowing waiver that ensures that the alleged mentally ill person received a full and fair hearing. *See, e.g., May,* 131 Or App at 571; *State v. Zabransky,* 166 Or App 672, 673, 998 P2d 805 (2000) (Edmonds, J., dissenting). If the record shows that the alleged mentally ill person was represented by counsel whose efforts resulted in compliance

---

[5] *Buffum,* 166 Or App at 557.

[6] When the legislature wants to require a personal examination of a party by a trial court or attach special requirements to a waiver, it knows how to enact a stat-ute that provides that kind of requirement. See, *e.g.,* ORS 135.360, which requires a trial court to make inquiry of a defendant in person regarding a proposed guilty or no-contest plea to a criminal charge. *See also* ORS 136.001(2) (requiring that the waiver of the right to be tried by a jury trial occur in writing).

with the requirements of the statute, we should affirm, because the purpose of the statute has been satisfied. *See, e.g., Buffum*, 166 Or App at 558, (Edmonds, J., concurring). In this case, counsel told the court that his client would "waive the reading of the advice of rights, but Mr. Burge has asked me to point out to the court that he has been in custody more than five days." There is nothing in the record to suggest that Burge's waiver in this case, made on his behalf by his counsel, was made in other than a voluntary and knowing fashion. The language of ORS 426.100(1) does not prohibit a valid waiver made through counsel, and we should not insert such a prohibition into the statute as if we were the legislature.

I dissent.