Argued and submitted January 7, 2000, affirmed February 28, 2001

In the Matter of Jeffrey Cach,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## JEFFREY CACH,
*Appellant.*

(9903-61470; CA A105887)

19 P3d 992

Thomas A. Coleman submitted the brief for appellant.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Edmonds, P. J., concurring.

Armstrong, J., dissenting.

## KISTLER, J.

The trial court committed appellant to the custody of the Oregon Mental Health and Developmental Disability Services Division because it found that, as a result of a mental illness, he was a danger to others and unable to provide for his basic needs. Appellant argues that the court's judgment should be reversed because the court failed to advise him of his rights under ORS 426.100. We affirm.

On March 11, 1999, the trial court appointed counsel to represent appellant.[1] The next day, appellant received a citation that, among other things, set out written advice about the nature of the hearing and some of appellant's rights at the hearing. The citation stated: "You have a right to representation by legal counsel at the hearing. If you are unable to afford legal counsel, you have the right to have legal counsel appointed for you." The hearing began approximately an hour and a half after appellant received the citation.

At the beginning of the hearing, the trial judge introduced himself to appellant and told him:

"A report has been made to the Court that you may have a mental disorder and because of that be dangerous to yourself and dangerous to others, or unable to take care of your basic needs. And I'm going to clarify which of those might apply in just a minute. I'm going to hold a hearing this morning to decide what to do about that report.

"I've appointed Mr. Varnes, who's sitting on your left, as your lawyer. You have the right to be represented by a lawyer. That's what he'll be doing.

"You can subpoena witnesses[—y]ou have that right [—]to court, meaning require witnesses to come here and testify. You can also, through your lawyer, cross-examine witnesses, meaning ask questions of them.

"The gentleman sitting across the table from me is with the District Attorney's office. He is here to represent the

---

[1] The court's order is dated March 12, 1999, but recites that counsel "is appointed as of March 11th."

State's interest. The State's required to prove the case against you."

The court went on to explain about the process of questioning witnesses, described the role that the examiners would play, and explained the possible consequences of the hearing to appellant. After hearing the evidence, the court ruled that appellant should be committed to the custody of the mental health division for no more than 180 days.

Appellant argues that the court's judgment should be reversed because it did not adequately advise him of one of the rights set out in ORS 426.100. Subsection (1) of that statute provides:

"At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:

"(a)  The reason for being brought before the court;

"(b)  The nature of the proceedings;

"(c)  The possible results of the proceedings;

"(d)  The right to subpoena witnesses; and

"(e)  The person's rights regarding representation by or appointment of counsel."

ORS 426.100(1). Appellant does not dispute that the trial court adequately advised him of the first four rights. Rather, he argues that the court erred in advising him of his "rights regarding representation by or appointment of counsel." Specifically, he argues that "[t]he trial court did not tell [him] of his right to private counsel or his right to represent himself."

Appellant's argument presents two statutory construction issues. First, he argues that the court should have told him that he had a right to retain private counsel. The trial court, however, had appointed counsel for appellant before it advised him of his rights—an act that, by statute, reflects the court's determination that appellant "d[id] not have funds with which to retain legal counsel[.]" *See* ORS 426.100(3)(b).[2] Appellant's argument accordingly reduces to

_____

[2] ORS 426.100(3)(b) provides: "If the person does not have funds with which to retain legal counsel, the court will appoint legal counsel to represent the person without cost."

the proposition that ORS 426.100(1)(e) required the trial court to advise him of the right to retain private counsel even though the trial court had already determined that he lacked the resources to do so.

Neither the text nor the context of ORS 426.100(1)(e) suggests that the statute imposes that obligation on trial courts. ORS 426.100(1)(e) directs trial courts to tell an allegedly mentally ill person about the right to be represented by retained counsel *or* the right to be represented by appointed counsel. The statute is phrased in the disjunctive, and a related statutory provision makes clear that the two rights are mutually exclusive. ORS 426.100(3)(b) provides that a person has a statutory right to appointed counsel in mental commitment hearings if he or she "does not have funds with which to retain legal counsel." Conversely, a person who has the resources to retain private counsel has no right to appointed counsel. *See* ORS 426.100(3)(b); *see also* ORS 426.100(3)(e) (when a person is being involuntarily detained, he or she has a right either to contact an attorney or have an attorney appointed as soon as reasonably possible). If a court has already determined that an allegedly mentally ill person does (or does not) have the funds to retain private counsel, the word "or" in ORS 426.100(1)(e) implies that a court may limit its advice to whichever of the two rights applies.

We recently explained that ORS 426.100(1) is intended to "provide an allegedly mentally ill layperson with sufficient productively usable information to enable the person to take the actions necessary to protect his or her interests." *State v. Buffum*, 166 Or App 552, 556, 999 P2d 541, *rev allowed* 331 Or 361 (2000).[3] ORS 426.100(1)(e) similarly leaves trial courts sufficient latitude to tailor their advice to

---

[3] We reasoned in *Buffum*:

"Each of th[e] items [set out in ORS 426.100(1)(a)-(e)] relates to a matter that could consume a full semester of a law school course. However, each could also contemplate a quantum of general and comprehensible information that could be communicated in a single sentence or two and that, taken together, could provide an allegedly mentally ill layperson with sufficient productively usable information to enable the person to take the actions necessary to protect his or her interests. We think that the legislature intended the statute to fulfill the latter purpose."

166 Or App at 556.

the needs of the case. *See id.* In this instance, the investigator's report disclosed that appellant had virtually no resources, and the trial court had appointed counsel for him before the hearing. When the court later told appellant about his rights regarding representation, it appropriately limited its advice to a discussion of appellant's right to be represented by the counsel whom the court had appointed and focused on the role that that counsel would play. ORS 426.100(1)(e) did not require the court to tell appellant about his right to retain counsel—an option that, for all practical purposes, appellant had no ability to pursue.[4]

■■ Appellant advances a second argument. He argues that the court should have told him that he had a right to represent himself. ORS 426.100(1)(e) directs courts to advise allegedly mentally ill persons of their "rights regarding representation by or appointment of counsel." Textually, the "rights" to which the subsection refers are the right to be represented by a retained counsel or the right to be represented by an appointed counsel. ORS 426.100(1)(e) says nothing about the right of self-representation, and we may not add what the legislature has omitted. *See State v. Rogers*, 330 Or 282, 290, 4 P3d 1261 (2000). The text of ORS 426.100(1)(e) does not advance appellant's claim that the court was required to advise him that he had a right to represent himself.

The context points in the same direction. ORS 426.100(3) sets minimum standards for counsel, identifies the condition for appointing counsel, authorizes other persons to request counsel on behalf of the allegedly mentally ill person, and specifies when the right to retained or appointed counsel may be exercised. Two paragraphs of subsection (3) potentially shed some light on the meaning of ORS 426.100(1)(e). ORS 426.100(3)(e) provides:

> "If the person is being involuntarily detained before a hearing on the issue of commitment, the right under paragraph (a) of this subsection to contact an attorney or under paragraph (b) of this subsection to have an attorney appointed may be exercised as soon as reasonably possible."

---

[1] Even if the court should have said more, any error was harmless. The record makes clear that appellant did not have the funds to retain an attorney.

Subsection (3)(e) identifies only two rights—the right to contact retained counsel and the right to appointed counsel—as a person's statutory rights of representation. That limited identification of rights reinforces the proposition that, when the legislature directed trial courts, in ORS 426.100(1)(e), to advise allegedly mentally ill persons of their "rights regarding representation by or appointment of counsel," it did not intend to require advice about a third right—the right of self-representation.

ORS 426.100(3)(d) also bears on the interpretation of ORS 426.100(1)(e). It provides: "If no request for legal counsel is made, the court shall appoint suitable legal counsel unless counsel is expressly, knowingly and intelligently refused by the person." It is possible to read subsection (3)(d) as describing a right not to be represented by counsel and say that it is one of the "rights regarding representation by * * * counsel" about which the court should have advised appellant. That reading does not fit easily with the text of the subsection, however. Subsection (3)(d) describes the level of knowledge that an allegedly mentally ill person must possess before he or she can refuse appointed counsel. Courts should be hesitant to convert the terms on which a right to appointed counsel may be refused into a separate aspect of the rights the statute describes.

If the legislature had wanted trial courts to advise allegedly mentally ill persons about their right to retain counsel, their right to appointed counsel, and their right to represent themselves, it could have said so. It directed trial courts, however, to tell allegedly mentally ill persons only about the first two rights and phrased the directive in the alternative. The advice that the trial court gave satisfied ORS 426.100(1)(e).

Affirmed.

**EDMONDS, P. J.,** concurring.

This case demonstrates the problems that this court has concerning the proper interpretation of ORS 426.100. Appellant was furnished appointed counsel who adequately represented him during his civil commitment hearing. He made no request to represent himself or to be represented by

private counsel to the trial court. However, he urges on appeal that his commitment should be set aside because the court failed, in its explanation of his right to representation by an attorney, to give him that additional explanation. In response to his arguments, the lead opinion holds ORS 426.100(1)(e) did not require the trial court to inform appellant about his right to retain private counsel or the right to represent himself, when the court had already appointed an attorney for appellant.

I am not persuaded by the lead opinion's reasoning. ORS 426.100(1)(e) provides that the court shall advise the alleged mentally ill person of "[t]he person's rights regarding representation by or appointment of counsel." In context, the statute by the use of the word "or" can mean nothing other than that the person must be informed of his or her right to retain private counsel. Also, implicit in the requirements of ORS 426.100(1)(e) is the understanding that the person must be made aware of the right of self-representation. Subsection (3) supports the latter understanding. It provides:

"(3)   When provided under subsection (2) of this section, an allegedly mentally ill person has the following rights relating to representation by or appointment of counsel:

"(a)   The right to obtain suitable legal counsel possessing skills and experience commensurate with the nature of the allegations and complexity of the case during the proceedings.

"(b)   If the person does not have funds with which to retain legal counsel, the court will appoint legal counsel to represent the person without cost. If a person is unable to afford legal counsel, payment of expenses and compensation relating to legal counsel shall be made as provided under ORS 426.250.

"(c)   If the allegedly mentally ill person does not request legal counsel, the legal guardian, relative or friend may request the assistance of suitable legal counsel on behalf of the person.

"(d)   If no request for legal counsel is made, the court shall appoint suitable legal counsel, unless counsel is expressly, knowingly and intelligently refused by the person.

"* * * * *

"(f) In all cases suitable legal counsel shall be present at the hearing and may be present at examination and may examine all witnesses offering testimony, and otherwise represent the person."

It is apparent from a plain reading of these provisions that the legislature contemplated the situation in which the alleged mentally ill person elects self-representation. It has expressly provided in subsections (c), (d) and (f) what should occur in the event that the person elects to exercise that right. The court must first ascertain whether the waiver is made knowingly and intelligently. Even in that event, the court is authorized to appoint counsel at the request of a relative, and counsel must be present in the courtroom to represent the person as a "friend of the court." The lead opinion is incorrect when it declares that the right to be advised of self-representation is not inherent in the statute, and, consequently, the court's advice in this case fell short of the statutory requirements on both grounds urged by appellant.

The next question is whether the trial court's failure requires reversal. ORS 426.100 is like any other statute, in that its interpretation depends on ascertaining the legislature's intent. We should interpret it as it is written and not add to, or delete language from, its text. ORS 174.010. There has been a tendency by this court to read this particular statute's requirements as if the failure to comply with them constitutes "structural" error. *See, e.g., State v. Montgomery*, 147 Or App 69, 934 P2d 640 (1997); *State v. May*, 131 Or App 570, 888 P2d 14 (1994). Although that term has a somewhat ambiguous meaning in the law, I understand it to refer to situations where the denial of a fundamental right is so pervasive that it necessarily infects the entire proceeding. An example would be the denial of the assistance of counsel in a criminal proceeding where there has been no effective waiver of that right. *See, e.g., State v. Barone*, 329 Or 210, 986 P2d 5 (1998).[1] In those instances, the concept of "harmless error"

---

[1] In *Barone*, the Supreme Court said:

" 'Structural error' is a term from federal constitutional jurisprudence that refers to errors that require automatic reversal because, where such an error occurs, the trial court 'cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded

can play no role because it is impossible to ascertain whether the proceeding was fundamentally fair. Nothing in the language of ORS 426.100 suggests that the legislature intended that a failure to comply with its requirements would constitute structural error. Consequently, this court has erred in the past to the extent that it has refused to consider arguments about waiver and harmless error, because those doctrines are applicable under this statute.

The dissent has one foot in the concept of harmless error and another in the concept of structural error. It would reason that the trial court's error was not harmless because appellant could have obtained resources from a friend or another source to hire an attorney and because the issue, in the dissent's view, is whether "appellant could have represented himself at all." 172 Or App at 758. If the answer to the last query is in the affirmative, then the dissent would reverse the commitment order, regardless of whether the alleged mentally ill person was represented by competent counsel and received a fair hearing, as the dissent concedes occurred in this case.

The answer to the dissent's first reason is that it is based on pure conjecture. There is not a speck of evidence in the record that appellant could have obtained from another person the resources with which to hire an attorney and, as the lead opinion points out, there is persuasive evidence that he could not afford an attorney on his own. In effect, the dissent's second reason is a disguised effort to read into the statute the structural requirement that it will always be error if the alleged mentally ill person is not advised of the right of self-representation. The dissent would impose a requirement that is not in the statute and that would inevitably result in a reversal of every case in which the advice of self-representation was not given.

---

as fundamentally fair.' *Rose v. Clark*, 478 US 570, 577-78, 106 S Ct 3101, 92 L Ed 2d 460 (1986) (citation omitted). Examples of such errors are the denial of the right to counsel at trial and the denial of the right to a trial conducted before an unbiased judge. *Id.* at 577, 106 S Ct 3101.

"This court has not adopted the doctrine of 'structural' or 'systemic' error in analyzing questions of Oregon law. Even if we were to adopt it, however, the doctrine would not apply in this case. Structural error analysis applies to denials of fundamental constitutional rights in criminal prosecutions." *Barone*, 329 Or at 226.

ORS 426.100(3)(d) provides that the court shall appoint counsel for an alleged mentally ill person "unless counsel is expressly, knowingly and intelligently refused by the person." In contrast, the issue framed by the dissent's construct is "whether appellant could have represented himself at all." While the statute focuses on the mental state of the alleged mentally ill person in making the decision to reject the offer of assistance of counsel before the evidentiary hearing on the person's mental status begins, the dissent focuses on the capacity in the hearing of the person for self-representation. Of course, the latter issue cannot be determined at the inception of the hearing. Additionally, the dissent reads into the statute an intent by the legislature to prohibit a harmless error result when no such intent exists in the language of the statute. The dissent cites no language in the statute or legislature history in support of its assertion; instead, it relies on its own expression of what it believes the legislature intended. I believe that it is evident from all of ORS 426.100 that the legislature was intent on providing a fair hearing to an alleged mentally ill person. A fair hearing includes the right to be represented by counsel. But there is nothing in the statute that even suggests that a reversal of a commitment judgment is required when the objective of a fair hearing is met, even though there were omissions in the giving of the required advice.

In this case, the trial court's failure to advise appellant of his rights to retain counsel and to represent himself is harmless error. As the lead opinion points out, it is uncontroverted that appellant had no financial ability to retain private counsel. As to his right of self-representation, appellant points to no error on the merits, to any inadequacy of the attorney who was appointed or to anything he would have done differently, if he had represented himself. It necessarily follows that the statutory purpose of ORS 426.100 was fulfilled. For these reasons, I concur with the lead opinion's affirmance of the judgment.

**ARMSTRONG, J.,** dissenting.

I agree with the concurrence that the trial court erred in failing to comply with ORS 426.100(1)(e) by failing to tell appellant that he had the right to represent himself or to

be represented by an attorney of his choice. The concurrence errs, however, in concluding that the trial court's error was harmless. The error was not harmless, and, as a consequence, we should reverse the judgment in this case.

The legislature adopted ORS 426.100 to give people whom the state seeks to commit information to enable them to participate as fully as possible in their commitment proceedings. It does that by requiring courts before which the proceedings are held to begin each proceeding by telling the allegedly mentally ill person a variety of things about the proceeding, including the rights that the person has regarding representation by attorneys. If the legislature intended the information to serve a purpose, and we must assume that it did, it necessarily intended the recipients of the information to be able to use it to the extent possible. Consequently, an evaluation to determine whether it was harmless to fail to give the required advice about the choices available to a person regarding representation should focus on whether the person could have taken advantage of the choices.[1] The focus should not be on whether the result would have been different if the person had selected one of the alternative choices.

The concurrence uses the correct approach with regard to the first of the two available choices about which appellant should have been advised: the right to select an attorney of his choice. The concurrence says that the failure to advise appellant of that choice was harmless because the record establishes that appellant did not have the money to hire an attorney, so he could not have acted on the advice if it had been given. Although I disagree that appellant's lack of money means that he could not have taken advantage of his right to choose his own attorney, I agree that the issue is the one framed by the concurrence: whether appellant could have acted on the advice. I disagree that appellant's lack of money resolves the issue because appellant conceivably could have obtained pro bono legal services or financial assistance from a friend, relative, or other source. Without evidence to

---

[1] This assumes that a harmless error analysis has a place in cases involving a trial court's failure to comply with ORS 426.100. There is reason to question that it does. *See State v. Buffum*, 166 Or App 552, 558-63, 999 P2d 541 (Armstrong, J., dissenting and rejecting majority's harmless error analysis), *rev allowed* 331 Or 361 (2000).

exclude those possibilities, we cannot conclude that appellant could not have been represented by an attorney other than the one whom the court appointed for him. Consequently, we cannot conclude that the failure to advise him of his right to be represented by an attorney of his choice was harmless.

The concurrence shifts its harmless error analysis on the second of the two choices about which the court failed to advise appellant—the right to choose to represent himself—from whether appellant could have acted on the advice to whether the result of the proceeding would have been different if he had. That is not the right focus. If it were, it would apply to the first choice—appellant's right to select an attorney of his choice—as well. Under that approach, harmlessness would not turn on whether appellant could have acted on the advice by choosing his own attorney but on whether the result of the case would have been different if he had. The record shows that appointed counsel did a competent job of defending appellant against the state's commitment effort, so, if the issue were whether the denial of the right to choose a different attorney affected the result in the proceeding, the answer presumably would be no.

But, as I have indicated, that is not the right focus.[2] Most people whom the state seeks to commit on the ground that they are mentally ill would be better served if they were represented by attorneys than if they represented themselves, but they have a right to ask to represent themselves, and the legislature wanted them to know that. Consequently, the issue is not whether appellant would have done a better job on his behalf than did his appointed attorney but whether

---

[2] *Long v. State of Oregon*, 130 Or App 198, 204, 880 P2d 509 (1994), supports that conclusion. *Long* was a post-conviction proceeding in which the petitioner contended that constitutionally deficient advice from his trial attorney had led him to agree to a stipulated-facts trial. On the issue of prejudice, we held that the issue was not whether the result would have been different if the case had been tried on other than stipulated facts but whether the petitioner would have accepted the offer of a stipulated-facts trial if he had received constitutionally sufficient legal advice. That is the very distinction that distinguishes the concurrence's harmless error analysis from mine on whether the court's failure to advise appellant of his right to represent himself was harmless error. *See also Buffum*, 166 Or App at 558-63; *State v. Zabransky*, 166 Or App 672, 673, 674 (Edmonds and Armstrong, JJ., dissenting), *rev held in abeyance pending decision in State v. Buffum* (2000).

appellant could have represented himself at all. I am not prepared to say on this record that he could not have done so. Consequently, I cannot say that the court's failure to comply with ORS 426.100(1)(e) by telling appellant that he had the right to represent himself was harmless when measured against the purpose served by the statute. I respectfully dissent.